UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANTAVIS LAMARCUS SHANNON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-02422-JPH-MJD |
| | ) |
| SGT. DAVID SCHWAB, | ) |
| SGT. ANDREW TRIVET, | ) |
| SGT. OLUWAFEMI AYODEL, | ) |
| MORGAN DAWS, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Indiana prisoner Dantavis Lamarcus Shannon suffered pain and swelling when Sgt. David Schwab used a bolt cutter to remove a handcuff that was stuck on his right hand. Mr. Shannon is suing Sgt. Schwab for excessive force in violation of the Eighth Amendment. He is also suing Licensed Practical Nurse Morgan Daws, Sgt. Andrew Trivet, and Sgt. Oluwafemi Ayodel for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

The defendants have moved for summary judgment. As explained below, the Court **grants summary judgment for all defendants**.

**I. Summary Judgment Standard**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine

dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II. Background

During the time relevant to this lawsuit, Mr. Shannon was a convicted prisoner confined to a restricted housing unit at Plainfield Correctional Facility ("Plainfield"). (Dkt. 71-1 at 9-10). Sgt. Schwab, Sgt. Trivet, and Sgt. Ayodel were correctional officers at Plainfield. (*Id.* at 34-35; dkt. 71-2 at 2). Nurse Daws was a member of the medical staff at Plainfield. (Dkt. 67-1 at ¶ 2).

### A. Sgt. Schwab removes a handcuff from Mr. Shannon's right hand

On June 20, 2021, Mr. Shannon asked Sgt. Schwab to escort him from his cell to the recreation area. (Dkt. 71-1 at 26). At around 10:00-10:30 a.m., Sgt. Schwab placed handcuffs on Mr. Shannon and walked him to the recreation area. (*Id.*). This was a routine interaction between Mr. Shannon and Sgt. Schwab, and nothing unusual happened until they got to the recreation area. (*Id.*).

When they got to the recreation area, Mr. Shannon's handcuffs would not come off. (*Id.* at 27). Sgt. Schwab turned to his fellow officer, Officer Cumba, and asked why he had given him a pair of broken handcuffs to place on Mr. Shannon. (*Id.* at 27-28). Until that moment, Sgt. Schwab "had no indication that [the handcuffs] were malfunctioning." (Dkt. 71-2 at 3). Sgt. Schwab was able to remove the handcuff from Mr. Shannon's left hand with a key, but the handcuff on his right hand remained stuck. (Dkt. 71-1 at 28).

Sgt. Schwab then used a bolt cutter to remove the handcuff from Mr. Shannon's right hand. (*Id.* at 29-32). At Plainfield, correctional officers have access to bolt cutters to remove handcuffs that have gotten stuck on a prisoner.

(Dkt. 71-2 at 4). This was the first time Sgt. Schwab had to use a bolt cutter to remove a handcuff. (*Id.*).

Mr. Shannon felt pain as soon as Sgt. Schwab started using the bolt cutter. (Dkt. 71-1 at 29). He told Sgt. Schwab that he was in pain, but Sgt. Schwab continued using the bolt cutter. (*Id.*). Sgt. Schwab successfully removed the handcuff with the bolt cutter after about 15 to 20 minutes. (*Id.* at 30).

Immediately after removing the handcuff, Sgt. Schwab took a picture of Mr. Shannon's swollen right hand. (*Id.* at 32). At around 11:00-11:30 a.m., Sgt. Schwab escorted Mr. Shannon to the medical unit where his hand was treated. (*Id.* at 33).

### B. Nurse Daws treats Mr. Shannon's injured right hand

Nurse Daws treated Mr. Shannon in the medical unit shortly after his hand was injured. (Dkt. 67-1 at ¶ 4). She observed that his right hand was swollen, that he said he was in pain, and that he was unable to make a fist. (*Id.*). She wrapped his hand with an ace bandage to control the swelling, instructed him to ice his hand, and contacted the physician, who gave orders for an x-ray. (*Id.*).

Nurse Daws stated that she offered Mr. Shannon Tylenol for pain, but that he refused because he already had Tylenol in his cell. (*Id.*; dkt. 67-2 at 12). Mr. Shannon disputes that he declined Tylenol and claims that Nurse Daws simply failed to provide him with any pain medication. (Dkt. 71-1 at 13). He also faults Nurse Daws for failing to order an MRI. (*Id.*).

4

As a licensed practical nurse, Nurse Daws does not have the legal authority to diagnose a patient, prescribe medication, or direct a physician's course of treatment. (Dkt. 67-1 at ¶ 5).

### C. Sgt. Trivet and Sgt. Ayodel take Mr. Shannon for follow-up care

That evening, Mr. Shannon asked Sgt. Ayodel to escort him to the medical unit so he could request pain medication. (Dkt. 71-1 at 34). He had unlimited access to ice for his hand, but the ice was not alleviating the pain, and he hoped to receive ibuprofen, Tylenol, tramadol, or another non-narcotic pain medication. (*Id.* at 15, 38).

After conferring with Sgt. Trivet, Sgt. Ayodel returned to Mr. Shannon's cell and said that Sgt. Trivet wanted him to complete a request for health care form before returning to the medical unit. (*Id.* at 34). Nevertheless, after an unspecified period of time, Sgt. Ayodel returned to Mr. Shannon's cell and told him to get dressed for the medical unit. (*Id.* at 39).

At his deposition, Mr. Shannon was asked, "Do you know how much time passed between your initial request to Officer Ayodel to go see medical and when you actually went to go see medical that evening?" (*Id.*). Mr. Shannon answered, "No, I don't." (*Id.*).

### D. Mr. Shannon's subsequent medical care

After Sgt. Ayodel escorted Mr. Shannon to the medical unit, a non-defendant nurse provided him with Tylenol. (Dkt. 77-1 at 13-14). The Tylenol relieved his pain. (*Id.* at 18).

5

The next day, Mr. Shannon received an x-ray of his right hand. (Dkt. 67-1 at 11). According to the radiologist, the x-ray showed "no acute fracture or dislocation. Joint spaces appear normal. No erosions. There is dorsal mid and proximal hand soft tissue swelling." (*Id.*). On June 28, 2021, Mr. Shannon received a second x-ray of his right hand. (*Id.* at 6). The radiologist determined that the x-ray was normal: "no acute fracture" and "soft tissues are unremarkable." (*Id.*).On July 16, 2021, Mr. Shannon received a third x-ray of his right hand. (*Id.* at 1). The radiologist again determined that the x-ray was normal. (*Id.*).

### III. Discussion

#### A. Medical claims against Nurse Daws, Sgt. Ayodel, and Sgt. Trivet

##### 1. Deliberate Indifference Standard

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721-22 (7th Cir. 2021).

"Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th

818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For purposes of this motion, the Court assumes that Mr. Shannon's swollen hand is a serious medical need. To survive summary judgment then, Mr. Shannon must show that the defendants acted with deliberate indifference— that is, that they consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id.* "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). But when the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42.

7

**2. Analysis**

**i. Nurse Daws**

Mr. Shannon has two complaints about the medical care Nurse Daws provided for his swollen hand: (1) she failed to order an MRI; and (2) she failed to provide him with Tylenol or other pain medication. (Dkt. 77-1 at 13).

With respect to the MRI, Nurse Daws was not deliberately indifferent. The record does not support a reasonable conclusion that Nurse Daws was personally involved in the decision to order x-rays instead of an MRI. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation.") (cleaned up). During the appointment with Mr. Shannon, Nurse Daws conferred with a physician, who ordered x-rays. Because the decision to order one type of diagnostic imaging over another was made by the physician, and not Nurse Daws, she is not liable for that decision. Relatedly, Nurse Daws was entitled to defer to treatment decisions made by Mr. Shannon's physician, including his decision to order x-rays rather than an MRI. *See Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 485 (7th Cir. 2022) ("As a general matter, a nurse can, and indeed must, defer to a treating physician's instructions" so long as this deference does not become "blind or unthinking," or result in the nurse failing to advise the physician about the ineffectiveness of certain prescribed treatments). There is no evidence that Nurse Daws engaged in blind deference, that she deferred to decisions that were clearly medically inappropriate, or that she concealed information about Mr. Shannon's condition from the physician.

8

Finally, even if Nurse Daws were responsible for the decision to have an x-ray rather than an MRI, "the decision to order or forgo certain diagnostic tests," such as an MRI, "is a matter for medical judgment," which courts will not disturb without evidence that the decision "departed significantly from accepted professional norms." *Crone v. Ippel*, 2023 WL 5276606 at *2 (7th Cir. August 16, 2023) (citing *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014)). And here, there is no such designated evidence.

Next, for the purpose of resolving the motion for summary judgment, the Court assumes that Nurse Daws, in fact, refused to give Mr. Shannon Tylenol. Even so, that does not rise to the level of deliberate indifference given the totality of the care Nurse Daws provided. Her decisions to confer with a physician, wrap Mr. Shannon's hand with an ace bandage, and provide him with an ice pack show that she affirmatively tried to alleviate his pain and swelling. *See Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (nurse practitioner's refusal to provide oxycodone was not deliberate indifference given the totality of care, including responding to the prisoner's requests for healthcare, reviewing his medical history, renewing his prescriptions, and providing alternative forms of pain relief). Nurse Daws did not persist in a course of treatment that she knew was ineffective or delay Mr. Shannon's access to a physician. While Mr. Shannon did not receive Tylenol immediately after the injury, he was able to obtain some later that day.

9

The evidence does not support a reasonable conclusion that Nurse Daws was deliberately indifferent to a serious medical need, and her motion for summary judgment is therefore **GRANTED**.

### ii. Sgt. Ayodel and Sgt. Trivet

Mr. Shannon claims that Sgt. Ayodel and Sgt. Trivet were deliberately indifferent to his swollen hand because they delayed his second visit to the medical unit on June 20, 2021, for an unspecified period of time.

"A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.*

Here, the designated evidence does not permit a reasonable conclusion that Sgt. Ayodel or Sgt. Trivet were deliberately indifferent. Mr. Shannon's injury, while painful, was not a medical emergency. No bones were broken and the swelling went down within a week (Dkt. 67-1 at 1, 6, 11). And while ice didn't relieve his pain, it was mild enough that it was effectively treated with Tylenol. (Dkt. 77-1 at 18). Further, Mr. Shannon's injury had not been ignored, as he had already been to the medical unit that day; his hand was wrapped in an ace bandage; and he had unlimited access to ice for pain and swelling. (Dkt. 67-1 at ¶ 4; dkt. 77-1 at 15). This case is therefore distinguishable from cases where a brief delay of medical care was determined to have violated the Eighth Amendment, or at least prevent summary judgment for the defendant. *See*

10

*Grieveson v. Anderson*, 538 F.3d 763, 778–80 (7th Cir.2008) (guards could be liable for delaying treatment for painful broken nose by at least a day-and-a-half); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (two-day delay in treatment for open dislocated finger for no medical reason stated a claim against prison doctor for deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir.1997) (dismissal for failure to state a claim proper because six-day wait to see a doctor was not unreasonably long for infected cyst deemed not that severe); *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir.1996) (evidence presented jury question as to "whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating").

Next, Mr. Shannon testified that he does not know how much time passed before Sgt. Ayodel took him to the medical unit. (Dkt. 77-1 at 39). It is undisputed that it was sometime later that evening, but there is no evidence that it was more than a few minutes (as opposed to, at most, a few hours). Mr. Shannon thus has not pointed to admissible evidence showing that the delay between his request to go to the medical unit for a second time that day, and his arrival at the medical unit, was so long that it could have violated his Eighth Amendment right to medical care while incarcerated. Accordingly, the Court **GRANTS** summary judgment for Sgt. Ayodel and Sgt. Trivet.

### B. Excessive force claim against Sgt. Schwab

Sgt. Schwab argues that he is entitled to qualified immunity for using a bolt cutter to remove a broken handcuff from Mr. Shannon's right hand.

### 1. Legal Standard

Qualified immunity protects government officials from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time that the conduct occurred. *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Although qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendants raise it. *Archer v. Chisolm*, 870 F.3d 603, 613 (7th Cir. 2017). To do so, the plaintiff must show: (1) that the defendant violated a constitutional right, when construing the facts in the light most favorable to the plaintiff; and (2) that the right was clearly established at the time of the alleged violation, such that it would have been clear to a reasonable actor that his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A failure to show either is fatal for the plaintiff's case, and courts may begin with either inquiry. *Id.* at 236.

To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The principle of fair notice pervades the qualified immunity doctrine. *Campbell*, 936 F.3d at 545. Qualified immunity applies unless the specific contours of the right "were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 138 S. Ct. at 590 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, (1987)). Existing caselaw must "dictate the resolution of the parties' dispute," *Comsys, Inc. v. Pacetti*, 893 F.3d 468, 472 (7th Cir. 2018). While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate," *White v. Pauly*, 137 S. Ct. 548, 551, (2017) (quotation marks omitted).

Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell*, 936 F.3d at 546 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted)).

### 2. Analysis

Here, there is no designated evidence that Sgt. Schwab was responsible for the handcuff getting stuck on Mr. Shannon's right hand; it was an accident. Sgt. Schwab's employer provided him with a bolt cutter to remove the handcuff.

He successfully removed the handcuff, but during the process, he caused pain and swelling to Mr. Shannon's hand.

Mr. Shannon has not shown that Sgt. Schwab's actions were clearly unconstitutional in June 2021. *See Stockton v. Milwaukee County*, 44 F.4th 605, 619 (7th Cir. 2022) (identifying the general rule that prison officials may not inflict pain on prisoners maliciously or sadistically). He has not provided a "closely analogous case finding the alleged violation unlawful," shown "such a clear trend . . . that we can say with fair assurance that the recognition of the right by controlling precedent was merely a question of time," or that Sgt. Schwab's conduct was "so egregious and unreasonable that no reasonable official could have thought he was acting lawfully." *Id.* at 620-21.

Qualified immunity allows government officials to carry out their discretionary duties without the fear of litigation, so it protects from suit all but the plainly incompetent or one who is knowingly violating the federal law. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Sgt. Schwab's actions to resolve the broken handcuff is a context where government officials are given leeway to address a problem without fear of litigation. It is unfortunate that Mr. Shannon's hand was injured, but the designated evidence does not support a conclusion that Sgt. Schwab's actions were clearly unconstitutional. Mr. Shannon argues that Sgt. Schwab should have contacted a member of the medical staff to remove the handcuff, but there is no evidence that a medical staff member would have been better trained for this task. Given these circumstances, no clearly

14

established law showed that Sgt. Schwab's conduct could have violated the Eighth Amendment in June 2021.

Moreover, as soon as the handcuff was removed, Sgt. Schwab documented the injury by taking a photograph, and then escorted Mr. Shannon to the medical unit for treatment. There is no evidence that he had a personal animus against Mr. Shannon or that he was motivated by anything other than the need to remove the broken handcuff. Given these facts, Sgt. Schwab is entitled to qualified immunity, and his motion for summary judgment is therefore **GRANTED**.

### IV. Conclusion

The defendants' motions for summary judgment, dkts. [65] and [70], are **GRANTED**. Mr. Shannon's motion for the status of the summary judgment motions is **GRANTED** because this order has issued. Dkt. [93]. The **Clerk is directed** to send a public docket sheet with Mr. Shannon's copy of this order. Final judgment in accordance with this Order shall now issue.

**SO ORDERED**.

Date: 9/26/2023

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DANTAVIS LAMARCUS SHANNON
267900
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel

15